## BROCKHAUS v. ROSE et al.

No. 10388—Opinion Filed Dec. 4, 1923.

### 1. Election of Remedies—Actions in Tort and for Cancellation of Instruments.

When plaintiff institutes a suit in tort for damages for the perpetration of fraud and deceit, and at the same time institutes a suit for the cancellation of certain contracts alleged to have been procured by fraud which are the basis of the suit for damages and prosecutes the suit for damages to a final determination, and obtains judgment for damages in a sum in excess of the face value of the note, interest, and cost of prosecution of said cause, he is thereby precluded and barred of his right to the cancellation of the note and mortgage for fraud.

### 2. Same—Effect of Election.

The institution of a suit on one of two inconsistent remedies and the prosecution of one to final judgment constitutes a bar to the institution or further prosecution of the other.

(Syllabus by Jones, C.)

Commissioners' Opinion. Division No. 3.

Error from District Court, Woodward County; J. C. Robberts, Judge.

Action by Herman A. Brockhaus against Charlotte D. Rose and the First National Bank of Woodward, Okla. From the judgment, plaintiff appeals. Affirmed.

D. P. Marum and Embry, Johnson & Kidd, for plaintiff in error.

Hoover, Cowgill & Swindall, for defendants in error.

Opinion by JONES, C. This suit was instituted by plaintiff in error, plaintiff below, in the district court of Woodward county, Okla., against the defendants in error, defendants below, to cancel a note for $2,000, and mortgage securing same which is alleged to be fraudulent and forged. Said note and mortgage had been duly assigned to the First National Bank of Woodward by codefendant Charlotte D. Rose.

The plaintiff, Brockhaus, alleges that he was induced to sign the note and mortgage unwittingly and without knowledge of the same by S. C. Rose, husband of Charlotte D. Rose, and without consideration. The mortgage covered 920 acres of land belonging to the said Brockhaus. Plaintiff alleges that he had transacted considerable business with the said S. C. Rose; had borrowed money from him at various times, evidenced by different notes and mortgages, and that same had been renewed, and by way of explanation, says that the note and mortgage in question must have been signed by him at sometime when he was executing or renewing some note given, but that he had no knowledge of the execution of same. It seems from the record that S. C. Rose had absconded subsequent to the execution of the note and mortgage, and the plaintiff's allegations are practically uncontradicted. To which petition the defendant Charlotte D. Rose answered by way of a general denial, and further answering avers that said note and mortgage has been duly assigned to the First National Bank of Woodward; that said bank obtained same in the general and ordinary course of business for value, without notice of any defense to the same. The defendant bank filed its answer generally denying all the allegations of plaintiff's petition, and further answering avers that said bank obtained said note and mortgage in the usual and ordinary course of business for value and without notice of any defense of the plaintiff to same or knowledge of any fraud practiced in the procurement of same. This briefly constitutes the facts as disclosed by the pleadings, and the evidence reasonably supports the contentions made and in fact there is no contradiction or serious conflict in the evidence as to the facts in this case. It seems from the record that on the same day on which this suit was instituted, the plaintiff, Brockhaus, instituted suit against S. C. Rose for damages, alleging fraud and deceit in procuring the note and mortgage in question, and asking judgment for damages in the sum of $1,000 as attorney's fee and other expenses which he has incurred and will be forced to incur by reason of fraud and deceit practiced upon him and, further alleges:

"That plaintiff's said title to his said real estate has been and is and will continue

to be during such litigation clouded and incumbered which is preventing and will prevent plaintiff from the full benefit and use thereof to the damages of plaintiff to the sum of $2,000, no part of said sum has been paid plaintiff."

And further alleges that the conduct of the defendant was wanton, malicious, and prematurely done, and this plaintiff is entitled to exemplary damages in the sum of $2,000. On October 27, 1916, default judgment was rendered in the damage suit against the said S. C. Rose in said action in the sum of $2,500 as damages, and $20.65 as cost; at the beginning of this suit an attachment was issued at the instance of plaintiff and an automobile levied upon belonging to the defendant, S. C. Rose, which attachment was sustained by the court. The automobile was sold and bid in by the plaintiff at $1,025, out of which $206 was paid as cost leaving to plaintiff for application on the judgment for damages $819. And thereafter, the case which we now have under consideration was submitted to the court without the intervention of a jury, and at the close of the evidence the plaintiff moved for judgment, which motion was overruled and plaintiff excepted, whereupon the court made special findings of fact as follows:

"First. That the note in controversy was signed by the plaintiff:

"Second. That the plaintiff received no consideration for the signing of said note at the time of its execution and delivery.

"Third. That the note was obtained from plaintiff by fraud, without any consideration except the sale of an automobile as hereinafter explained.

"Fourth. The plaintiff at the time of signing, believed that he was signing some other note or mortgage.

"Fifth. The plaintiff is well educated, reads and writes the English language readily; that he has been engaged in the retail mercantile business in the city of Woodward more than fifteen years immediately prior to signing said note and mortgage; on request of the court he promptly and correctly read the note and mortgage involved, and the court finds that he was negligent and careless in signing the note and mortgage involved in this case.

"Sixth. The defendant bank purchased said note from the payee in due course in good faith, for valuable consideration, before maturity, and at the time had no knowledge of any defect in said note, nor defense thereto.

"Seventh. The defendant took said note as collateral security for past indebtedness in the nature of an overdraft of the payee, due the defendant bank.

"Eighth. At the time of taking said note, the bank agreed to extend payment on said overdraft, amounting to____dollars, but no definite time of extension was agreed upon, simply an understanding and agreement that the time of payment of the overdraft should be extended until the payee could hear from his father, who was living in Michigan, and obtain money to pay the overdraft.

"Ninth. At the time the bank purchased the note, it was transferred and delivered to the defendant by written assignment on the back of the note, and at the same time also by another written assignment of the note and mortgage which was introduced in evidence.

"Tenth. The court also finds that two of the coupon notes were past due and unpaid at the time the bank purchased the note, and that they are the only part of the note that was due and unpaid at that time.

"Eleventh. The court further finds, as a matter of fact, that the plaintiff, prior to the commencement of this suit, commenced an action against S. C. Rose to recover damages occasioned by reason of obtaining the note and mortgage involved, and placing the matter upon the records affecting the title, or having the same recorded in the office of the register of deeds in the county wherein the land was situated, and that in that case he recovered judgment in the sum of $2,500; that at the time of the commencement of suit, an action in attachment was also commenced and levied upon an automobile belonging to Rose, the defendant, and the attachment was sustained by the court, and an order of sale issued and the automobile bid in by plaintiff in this case at the sum of $1,025, upon which he paid the sum of $206 as court costs, and that no part of that judgment has been paid except what was collected by or under the sale of the automobile, as above stated.

"Twelfth. The court also finds that the mortgage was dated June 1, 1912, and was not recorded in the office of the register of deeds in which the land is situated until August 28, 1913, the day before the same was purchased by the bank.

"Thirteenth. By the attachment and sale of the payee's automobile, the plaintiff has received the sum of $1,025 from the payee on said note, less the sum of $206, which he paid out as cost in the legal proceedings."

And on June 26, 1918, the court rendered judgment in favor of plaintiff cancelling and setting aside the note and mortgage complained of, except in the sum of $1,394, for which amount judgment was rendered against plaintiff, and the property impressed with a lien in favor of the First National Bank of Woodward for which the mortgage

was foreclosed for the benefit of said bank in such amount, and for $200 attorney's fee, and $28.50 cost, from which order and judgment of the court the plaintiff appeals.

Plaintiff in error assigns numerous errors but when analyzed the contention simply is that as a matter of law the court was in error in rendering any judgment against the plaintiff and in favor of the defendants and was in error in not totally canceling and setting aside the note and mortgage in controversy. And complains of the conduct of the court in permitting the defendant bank to amend its answer and make proof of the institution and results of the suit by plaintiff, Brockhaus, against S. C. Rose; defendant alleging and pleading same as an estoppel to any recovery in this case on the theory of election of remedies; contending that plaintiff could not pursue both remedies; in other words, that he was not entitled to recover damages against Rose for fraud and deceit in the sum of $2,500, which was amply sufficient to cover all damages that he could possibly sustain by reason of the fraud complained of, and also be entitled to have note and mortgage cancelled, and that his election to pursue his remedy for damages based on fraud and deceit to final judgment, prior to the final trial of this case, precluded him from his right to have the note and mortgage cancelled on the grounds that same was procured by fraud. And further avers that they are innocent purchasers of the note and mortgage in question and for that reason are entitled to recover full value of same.

Plaintiff in error further makes the contention that the evidence was insufficient to entitle the bank to recover upon any theory, and further contends by reason of the character of the note and the condition and provisions of the mortgage that same was nonnegotiable, and, that the defendant First National Bank of Woodward, Okla., took same subject to all defense that might have been interposed while in the hands of the original vendee of said instrument. The first proposition presented in this cause is that of the election of remedies and whether or not the plaintiff in error, having pursued to final judgment the suit against S. C. Rose for damages for the fraud complained of and having obtained judgment in same in a sum sufficient to cover all loss which he might incur by reason of the note and mortgage in question, is he now entitled to maintain this action for the cancellation of the note and mortgage. Both plaintiff and defendant cite many authorities in support of their contentions, but from an examination of them we find but little light to guide us in

our opinion; but it seems self-evident that the plaintiff would not be entitled to recover damages to the extent of $2,500 by reason of having been fraudulently induced to execute a note and mortgage for $2,000, and also entitled to the cancellation of the note and mortgage, the subject-matter of which he complains in his suit for damages. And the following authorities seem to support this view. In the case of McLendon Brothers v. Finch, 2 Ga. 421, the court said in paragraph A of the 3rd paragraph of the syllabus of the opinion:

"No matter what right the party wronged may have of electing between remedies or of pursuing different defendants for the same cause of action, when he once obtains full satisfaction from one source his cause of action ends, and he can assert it no further."

And in the body of the opinion, we find this language:

"That there can be but one satisfaction for the same cause of action is elementary, and the justness of the rule must appeal to every one not possessed of 'an unnatural insensibility to the essential fitness of things.' No matter what right of election the plaintiff may have as to choice of remedies, or as to whom he shall sue or join as parties defendant, or as to waiving tort and suing on contract, still when once he has received satisfaction for the cause of action, his right to further sue in any form forever ends."

This is an action in which Finch had sold to McLendon Brothers the timber right on certain land giving them the exclusive right of ingress and egress and conveying all the timber for a certain sum; a part of the purchase price was evidenced by promissory notes executed by McLendon Brothers. He, Finch, thereafter sold a railroad right of way to the East & West Railroad Company through the land on which the timber stood, and in which conveyance he made no reservation as to the timber. The railway company proceeded to construct their railroad, cut the timber from same and utilize it for their own use and benefit. McLendon Brothers and Smith, who was one of the partnership, brought suit against the railroad company for damages for the timber cut by the railroad company. A settlement was made in the case in which the railroad company paid to McLendon Brothers and Smith $425, as settlement in full for all damages done; on account of the controversy, McLendon Brothers refused to pay the notes given Finch, as a part of the purchase price for the timber, and subsequent to the settlement of the suit against the railroad company, Finch instituted suit against McLendon Brothers

on the note. McLendon Brothers in answer to the petition pleaded damages by reason of the sale of the right-of-way to the railway company in a sum in excess of the face value of the notes. On the trial of the case the court directed a verdict for the plaintiff for the amount of the note sued on and the defendant appealed. And the Supreme Court sustained the judgment of the lower court on the theory that the defendants could not be heard to complain against the plaintiff, Finch, by reason of the sale to the railway company, in view of the fact that they had recovered damages against the railway company in satisfaction of all damages done, and were therefore liable on the note for its full face value.

20 Corpus Juris, page 35, sec. 25, in discussing the question of election of remedies cites the case of Moller v. Tuska, 87 N. Y. 166, wherein the court said:

"But where the defendant permits a subsequent action to be pursued to judgment, it will operate as a bar to further prosecution of the first suit."

And in the body of the opinion we find this language (the court speaking of the election of remedies): "The plaintiffs manifested their election by bringing this action. After that the other way of redress was not open to them."

According to Comyn (Dig. Elect. C-2):

"If a man once determines his election it shall be determined forever."

And while there is a conflict of authorities as to what constitutes an election, we think the weight of authorities and the better rule is that the election is made when a suit is instituted and is final unless withdrawn within a reasonable time, and where there are two or more suits instituted the first remedy that is pursued to final determination, and judgment obtained is a bar and precludes a further prosecution of the other suit. This of course only applies where the remedies pursued are inconsistent or in conflict, one with the other. There are many cases the character of which will authorize the plaintiff to pursue numerous concurrent and consistent remedies at the same time and until such time as he has obtained complete satisfaction.

We are inclined to the opinion that this question is decisive of the right of the parties in this case, and that under this theory of the law the plaintiff was not entitled to the cancellation of the note and mortgage, and the defendant upon the issues set up in their answer asking for judgment for the entire amount of the note and foreclosure of the mortgage was

entitled to secure the full amount. The court, however, for some reason, which we are unable to fully comprehend, canceled the note and mortgage, but rendered judgment for defendants against the plaintiff on the note for $1,394, attorney's fee, and cost, and impressed the property covered by the mortgage with a lien to secure payment of same. We are at a loss to know how the court arrived at this amount as being correct, but from our viewpoint the defendants are the only ones aggrieved by reason of this judgment, and as they have not appealed from the same we do not feel called upon to modify the judgment or reverse the case on that ground. The error complained of based on the contention that the note was not a negotiable instrument is not well taken. and the other errors assigned, we take it, are not material, and we therefore recommend that the case be affirmed.

By the Court: It is so ordered.